**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000439
28-FEB-2024
07:31 AM
Dkt. 92 SO**

NO. CAAP-23-0000439

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF O.H.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 19-00122)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and Nakasone, JJ.)

Mother-Appellant appeals from the Order Terminating Parental Rights (**TPR Order**), entered on July 11, 2023, in the Family Court of the First Circuit (**Family Court**). The TPR Order terminated Mother's parental rights to O.H. (**Child**), who was born in April 2019 and abandoned to strangers by Child's father in May 2019.

On appeal, Mother contends that the Family Court erred: (1) in finding clear and convincing evidence that Mother would not be able to provide a safe home for Child within a reasonable period of time; (2) in entering the TPR Order, where the June 10, 2021 Motion to Terminate Parental Rights (**TPR Motion**) did not contain a permanent plan that was found to be in Child's best interests; and (3) in failing to appoint counsel for Mother for 102 days at the beginning of the case. Mother also challenges certain aspects of the Family Court's August 31, 2023 Findings of Fact and Conclusions of Law (**FOFs/COLs**). Specifically, Mother challenges FOFs 119, 169, 175, 196, 202, 210, 216, 220, 226-228, 232, 238 and 244.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to

the arguments advanced and the issues raised, we resolve Mother's contentions as follows, and affirm.

(1) Mother appears to contend that DHS failed to establish by clear and convincing evidence, pursuant to HRS § 587A-33(a) (2018),[1] that Mother will not become willing and able to provide Child with a safe family home, even with the assistance of a service plan, within a reasonable period of time. Her contention is based on her challenge to the above-identified FOFs, including her argument that she testified that she had been diligently looking for suitable housing and might need three to six months to find it.

We review the Family Court's FOFs for clear error. See In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (citing In re Doe, 84 Hawaiʻi 41, 46, 928 P.2d 883, 888 (1996)).

FOF 119 is not clearly erroneous. The January 31, 2022 Supplemental Safe Family Home Report to Court demonstrated that Mother "expressed her desire to have [Child] be placed with paternal grandmother in Alabama and that she may be agreeable to Legal Guardianship with paternal grandmother." On February 7, 2022, Mother agreed to guardianship of Child by paternal grandmother, and the Family Court permitted Child to be placed in Alabama if the Interstate Compact on Placement of Children referral was granted. On May 31, 2022, DHS reported that Mother

---

[1]    HRS § 587A-33(a) provides, in relevant part:

    (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:

    (1)    A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;

    (2)    It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care;

    (3)    The proposed permanent plan is in the best interests of the child.

continued to support Child's placement with paternal grandmother in Alabama.  The record reflects that Mother repeatedly agreed to Child's placement with paternal grandmother in Alabama.

FOFs 169 and 216 are not clearly erroneous.  In FOF 167, which Mother does not contest, the Family Court found that DHS maintained consistent communication with Mother in attempts to provide her with support.  See Balogh v. Balogh, 134 Hawaiʻi 29, 33 n.3, 332 P.3d 631, 635 n.3 (2014) (holding that unchallenged findings of fact from the family court are binding on the appellate court).  Throughout the case, Mother failed to provide or delayed in providing contact information and/or consents for resources, so as to allow DHS to verify her participation in services.  See, e.g., FOFs 108, 110, 115-16, 139, 145, 168, 171, 212, and 214 (all unchallenged).  Mother had also relocated to California without informing DHS or the guardian ad litem (**GAL**).

FOFs 175, 220 and 232 are not clearly erroneous, and we also reject Mother's related argument based on her purported testimony that she might need only three to six months to find suitable housing.  At the July 10, 2023 hearing, when asked how much longer she would need to find housing in Georgia for herself and Child, Mother testified:

> I'm still pretty much getting to know the area, so it would be kind of difficult for me to say.  If I had to give an estimate, I would say in the next three to -- three to six months.  But it would be kind of difficult for me to say, as I'm new to the area.  Yeah, it -- it would be kind of difficult for me to say at this time.

In FOF 201, which Mother does not contest, the Family Court found that "[t]hroughout the pendency of this case Mother was unable to secure stable housing where she was able to have the Child placed with her, including up to and as of [the July 10, 2023 hearing,] which was four years after the date of entry into foster care." See In re AK, No. CAAP-21-0000455, 2022 WL 1134991, at *3 (Haw. App. Apr. 18, 2022) (SDO) ("Two years is the maximum, not minimum, amount of time within which a parent must become willing and able to provide a safe family home." (citing In re MP, No. CAAP-18-0000731, 2019 WL 1614717 at *2 (Haw. App. Apr. 16, 2019))).  In any event, based on our review of the record, we

conclude that FOFs 175,[2/] 220 and 232, which present mixed issues of fact and law, are supported by substantial evidence from which a reasonable factfinder could have found it highly probable that these FOFs were true.  See In re JK, 149 Hawaiʻi 400, 409-10, 491 P.3d 1179, 1188-89 (App. 2021).

FOF 196 is not clearly erroneous.  Mother offers no legal support for her argument that her hospitalization in May 2019 did not render her "unavailable" for Child, as that term is used in FOF 196.  Additionally, in FOF 17, which Mother does not contest, the Family Court found that on May 14, 2019, DHS confirmed the threat of abuse and threat of neglect to Child due to "unknown mother and unknown father" being unavailable to care for Child.  Further, FOF 45, which Mother does not contest, reflects that at the September 11, 2019 contested hearing on DHS's Petition for Temporary Foster Custody, the Family Court found that Child's "physical or psychological health or welfare had been harmed or was subject to threatened harm by the acts or omissions of . . . Child's family[.]"  These unchallenged FOFs establish that Child was subject to threatened harm by Mother's acts or omissions when Father left Child with strangers and Mother was not there to care for Child.  See HRS § 587A-4 (defining "[t]hreatened harm").

FOF 202 is not clearly erroneous.  In the February 19, 2020 Short Report, Mother reported that she was not prepared to take Child full-time because she needed more time to find a suitable home.  Indeed, the unchallenged FOFs reflect that throughout the pendency of the case, DHS could not verify that Mother had stable housing that could include Child.  See, e.g., FOFs 56, 95, 109, 116, 130, 146, and 201 (all unchallenged). Consistent with FOF 22, Mother testified at the July 10, 2023 hearing that her then-current housing did not allow minors.

FOF 210 is not clearly erroneous.  Mother appears to contend that FOF 210 is inconsistent with FOF 56, but that is not the case.  FOF 210 is supported by substantial evidence.

---

[2/]   We further address below in section (2) that part of FOF 175 that states the court's conclusion that the proposed permanent plan was in the Child's best interests.  We also address FOF 244 in section (2).

FOFs 226 and 238 are not clearly erroneous. In FOFs 170 and 174, which Mother does not contest, the Family Court found that DHS provided Mother with the opportunity to engage in services and gave her enough time to do so, but Mother failed to do so. DHS social worker Maili Taele (**Taele**) testified that Mother did not request additional services, did not complete services other than parenting education, and would not be able to provide a safe family home for Child within a reasonable period of time, because Mother had not completed services over the span of four years. The GAL also testified that Mother's relocations did not "cut mustard" with him.

FOF 227 is not clearly erroneous. Mother has not explained how the multiple social workers assigned to her case meaningfully impacted her ability to complete services within a reasonable period of time. In contrast, at the July 10, 2023 hearing, the Family Court found that the number of assigned social workers did not meaningfully impact whether Mother or Father were able to establish a safe family home either now or within a reasonable period of time, "as the social workers maintained contact with Mother . . . consistently and in an effort to determine if she was complying and to support her." This conclusion is supported by FOF 167, which Mother does not contest.

FOF 228 is not clearly erroneous. In FOFs 167 and 171, which Mother does not contest, the Family Court found, respectively, that DHS maintained consistent contact with Mother and that Mother repeatedly failed to provide DHS with "information, documentation, and/or consents that would have allowed the DHS to verify Mother's oral claims that she was in therapy." The Family Court made other similar findings in FOFs 115, 129, 139, 145, 214, and 229, all uncontested.

In sum, the Family Court did not clearly err in finding clear and convincing evidence that Mother will not become willing and able to provide Child with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

(2) Mother appears to contend that the Family Court erred in entering the TPR Order, because the June 10, 2021 TPR Motion did not contain a permanent plan that was found to be in

Child's best interests. To be clear, based on her challenges to FOFs 175 and 244, it appears that Mother is actually arguing that the Permanent Plan dated April 26, 2023, which is attached to the TPR Order and which the Family Court found to be in Child's best interests, is not the same as the initial Permanent Plan, dated May 17, 2021, which was attached to the TPR Motion.

Mother offers no legal authority supporting her argument, and we do not read the relevant statutes as requiring that the permanent plan attached to the motion to terminate parental rights must be the same permanent plan considered during the termination of parental rights hearing and eventually found to be in the child's best interests. See HRS §§ 587A-32, -33(a)(3) (2018). Mother does not argue that she did not receive proper notice of the April 26, 2023 Permanent Plan[3] or was otherwise prejudiced by the updating of the permanent plan. Moreover, Taele and the GAL testified that the April 26, 2023 Permanent Plan was in Child's best interests, and the Family Court reached the same conclusion. Mother's contention is therefore without merit, and FOFs 175 and 244 are not clearly erroneous.

(3) Mother contends that the Family Court committed structural error by failing to appoint counsel for Mother at the beginning of the case – from May 17, 2019, to August 28, 2019. See In re L.I., 149 Hawaiʻi 118, 122-23, 482 P.3d 1079, 1083-84 (2021); In re T.M., 131 Hawaiʻi 419, 435, 319 P.3d 338, 354 (2014); see also In re P Children, No. CAAP-22-0000636, 2023 WL 6122124, at *2-4 (Haw. App. Sept. 19, 2023), cert. granted, No. SCWC-22-0000636, 2023 WL 8609882 (Haw. Dec. 7, 2023) (Order).

It appears from the uncontested FOFs and the record, however, that Mother was not appointed counsel when the May 17, 2019 Petition for Temporary Foster Custody was filed – or prior to the May 21, 2019 hearing on the petition – because Child had been abandoned to strangers, and Mother and Father's identities were unknown. See FOFs 9-23 (all unchallenged). Prior to the

---

[3] For example, the April 26, 2023 Permanent Plan was listed as State's Exhibit 77 and attached as such to DHS's supplemental Exhibit List, filed on May 4, 2023.

next court date, August 28, 2019, DHS identified Mother and Father.  FOFs 28-29, 37.  Mother made her initial court appearance at the August 28, 2019 hearing.  FOF 37.  Prior to commencement of the hearing, Mother applied for and received court-appointed legal counsel, who appeared on Mother's behalf at the August 28, 2019 hearing and throughout the remainder of the proceedings.  FOF 6, 38.

These circumstances distinguish this case from L.I., T.M., and P Children, all of which involved a known parent or parents who were not timely appointed legal counsel.  Here, in contrast, Mother's identity was unknown when the Petition for Temporary Foster Custody was filed and heard; after she was identified, she received court-appointed counsel prior to her first court appearance.  In these circumstances, we conclude that the Family Court did not commit structural error in not appointing counsel for Mother any earlier.  See In re Adoption of a Male Child, No. CAAP-23-0000290, 2024 WL 510988, at *2 (Haw. App. Feb. 9, 2024) (SDO) ("A.M.'s argument that there was structural error in the CPS Case because the family court did not appoint counsel for the unidentified father, who was properly served and defaulted, is without merit." (citation omitted)); cf. In re JH, 152 Hawaiʻi 373, 378, 380, 526 P.3d 350, 355, 357 (2023) (upholding the appointment of counsel at parents' first hearing as timely).

For the reasons discussed above, we affirm the Order Terminating Parental Rights, entered on July 11, 2023, in the Family Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, February 28, 2024.


On the briefs:

Herbert Y. Hamada                /s/ Keith K. Hiraoka
for Mother-Appellant.            Presiding Judge

Kurt J. Shimamoto,               /s/ Clyde J. Wadsworth
Julio C. Herrera,                Associate Judge
Patrick A. Pascual, and
Regina Anne M. Shimada,          /s/ Karen T. Nakasone
Deputy Attorneys General         Associate Judge
for Petitioner-Appellee.